IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | CR. NO. 19-00137 JAO |
|---|---|
| Plaintiff, | **ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)** |
| vs. | |
| SAMUEL JOHN MEDEIROS, JR., aka "John John," | |
| Defendant. | |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Samuel John Medeiros, Jr. ("Defendant") filed a Motion for Reduction in Sentence ("Motion"), seeking compassionate release pursuant to 18 U.S.C. § 3582. ECF No. 23. The Court decides this motion without a hearing pursuant to Local Rule 7.1(c). For the following reasons, the Motion is DENIED WITHOUT PREJUDICE.

## I. BACKGROUND

### A. Procedural History

On September 23, 2019, the Government filed an Information against Defendant, alleging violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). ECF No. 1. On September 25, 2019, Defendant signed a Waiver of Indictment and

entered into a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, admitting that he was guilty of possession with intent to distribute, 5 grams or more of a substance and mixture containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  ECF Nos. 6–7.  On January 15, 2020, consistent with the plea agreement, the Court sentenced Defendant to 90 months in prison and five years of supervised release.  ECF Nos. 15–16.  Defendant is incarcerated at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield") and is expected to be released on October 22, 2025.  ECF No. 23-2 at 2; *see* Federal Bureau of Prisons, https://www.bop.gov/inmateloc (follow "Find By Name" tab; then search for "Samuel John Medeiros") (last visited June 25, 2021).

On July 31, 2020, Defendant's request for a reduction in sentence based on his medical condition was denied by Warden M.D. Smith ("Warden").  ECF No. 23-2 at 5.  Based on Defendant's medical records, the Warden determined that Defendant did not have a debilitating medical condition that resulted in limited self-care abilities.  *Id*.  Additionally, the Warden explained that the potential exposure to COVID-19 did not currently meet the criteria for a reduction in sentence.  *Id*.  On March 31, 2021, Defendant filed the Motion, ECF No. 23, and on April 1, 2021, Defendant filed a redacted version of his Memorandum in Support of Motion, ECF No. 27.  With the Court's permission, on April 7, 2021,

2

Defendant filed his medical records and an unredacted Memorandum in Support of Motion under seal. ECF Nos. 24, 28–31.

On April 25, 2021, Defendant filed a Supplement to his Motion ("Supplement") to address his positive COVID-19 test. ECF No. 36. On May 19, 2021, the Government filed an opposition to Defendant's Motion and Supplement, a Second[1] Motion to File Additional Medical Records of the Defendant under Seal as Exhibit 1 ("Second Motion to File"), and a Motion to Strike One Sentence of Page 6 of the Defendant's Memorandum in Support of Motion (ECF Nos. 27 & 29) ("Motion to Strike"). ECF Nos. 41–43. The Government's Motion to Strike was based on a page citation error by Defendant. *See* ECF No. 43. The Court denied the Government's Motion to Strike; and upon the Court granting the Second Motion to File , the Government filed Defendant's relevant medical records under seal. ECF Nos. 44–46. On May 26, 2021, Defendant filed a reply. ECF No. 47.

//

//

//

//

---

[1] On April 19, 2021, the Government filed a Motion to File Additional Medical Records of the Defendant under Seal, ECF No. 33, which the Court denied due to the Government's failure to submit the portions of Defendant's medical records that were the subject of its motion. ECF No. 39.

B. Defendant's Background

1. Defendant's Current Condition

Defendant, who is 50 years old, is battling hypertensive stage five chronic kidney disease[2] and is dependent on renal dialysis.[3] ECF No. 30 at 3, 7; ECF No.

//

//

---

[2] There are 5 stages of chronic kidney disease ("CKD"); at stage 5, or end-stage renal disease, kidney function is severely reduced such that dialysis or a kidney transplant is needed to survive. *See* UCLA Health, "What is CKD?," https://www.uclahealth.org/core-kidney/chronic-kidney-disease-ckd-1107 (last visited June 25, 2021); Ctrs. for Disease Control & Prevention ("CDC"), "Chronic Kidney Disease Basics," https://www.cdc.gov/kidneydisease/basics.html (last visited June 25, 2021).

"The clinical diagnosis of hypertensive CKD includes a long period of antecedent, poorly controlled hypertension, [reduced kidney function], and features suggestive of other end-organ complications of uncontrolled hypertension[.*]" Dr. Anna C. Porter et al., "Hypertensive Chronic Kidney Disease," *in Chronic Kidney Disease, Dialysis, and Transplantation* 62–72 (Dr. Jonathan Himmelfarb & Dr. Alp Ikizler eds., 2019) (ebook). "[I]t is well accepted that CKD causes and contributes to hypertensive disease. . . . [T]he prevalence of hypertension is higher in patients with CKD compared with the general population, and . . . this prevalence increases further as patients progress to [end-stage renal disease]." *Id.* (footnote omitted).

\* *See infra* n. 7.

[3] Dialysis is the process that "filters out toxins from the blood in people who have end-stage renal or kidney disease." *See* Yale Medicine, "Preparing for Dialysis (AV Fistula)," https://www.yalemedicine.org/conditions/preparing-dialysis-av-fistula (last visited June 25, 2021).

38 at 13:7–8; ECF No. 41 at 6. ███████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████ Additionally, Defendant is obese, with a Body

Mass Index ("BMI") of over 30.0.[6] ECF No. 27 at 3. He also suffers from other

medical conditions, including hypertension,[7] gastro-esophageal reflux disease,[8] and



---

[6] CDC, "Defining Adult Overweight and Obesity," https://www.cdc.gov/obesity/adult/defining.html (last visited June 25, 2021) (describing a BMI of 30.0 or higher as "obes[e]").

[7] Hypertension, also known as high blood pressure, when uncontrolled, increases one's risk of serious health problems, such as heart attacks and strokes. *See* Mayo Clinic, "High Blood Pressure (Hypertension)," https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/symptoms-causes/syc-20373410 (last visited June 25, 2021).

[8] Gastro-esophageal reflux disease "occurs when stomach acid frequently flows back into the tube connecting [the] mouth and stomach," which can irritate the stomach lining and cause heartburn, chest pain, and difficulty swallowing. *See* Mayo Clinic, "Gastroesophageal reflux disease (GERD)," https://www.mayoclinic.org/diseases-conditions/gerd/symptoms-causes/syc-20361940 (last visited June 25, 2021).

█████████, ECF No. 12 at 19; ECF No. 30 at 3–4, 7; ECF No. 41 at 6. He takes the following prescription medications: Amlodipine, Calcium Acetate, Carvedilol, Gabapentin, Losartan potassium, Minoxidil, Ranitidine, Spironolactone, and Vitamin B with C Tab. ECF No. 12 at 20; ECF No. 41 at 6.

In December 2020, Defendant tested positive for COVID-19, coming down only with body aches. ECF No. 36-1 at 2; ECF No. 36-2 at 4. He appears to have recovered. ECF No. 46-4 at 63.

2. Defendant's History and Post-sentencing Behavior

Defendant's crime involved at least 80 grams of "ice" and, based on the recovery of $5,934 in drug proceeds, 175.2 grams of generic methamphetamine. ECF No. 7 at 6–7, 13; ECF No. 12 at 7. While methamphetamine is a dangerous drug, the Government concedes that Defendant sold street-level amounts of it. *See* ECF No. 41 at 24.

Defendant has an extensive prior criminal record that includes convictions for burglary in the first degree, attempted burglary, possession of a firearm,



criminal trespass, unauthorized control of a propelled vehicle, theft in the second degree, drug possession, reckless driving, driving without a license, accidents involving bodily injury, and resisting an order to stop a motor vehicle. ECF No. 12 at 9–16; ECF No. 41-1. He also has had numerous failures while under court supervision, including repeated parole violations. ECF No. 12 at 9–16. Notably, Defendant was receiving periodic dialysis when he committed some of these violations, including the instant offense. *See, e.g.*, ECF No. 38 at 11:12–14.

    C.    Conditions at MCFP Springfield

As of this writing, MCFP Springfield has zero active cases among inmates or staff. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited June 25, 2021). Currently, MCFP Springfield has a population of 864 inmates, with 359 inmates who have recovered from COVID-19. *See id.*; Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/spg (last visited June 25, 2021).

II.    DISCUSSION

    A.    The First Step Act

Prior to the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 ("First Step Act"), only the BOP could move for an inmate's compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A) (2012). But the First Step

Act amended, among other things, 18 U.S.C. § 3582(c)(1)(A), which now allows inmates to seek compassionate release:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*[.]

18 U.S.C. § 3582(c)(1)(A) (2018) (emphasis added). United States Sentencing Guidelines ("USSG") section 1B1.13 ("the Guideline") addresses Section 3582 motions, but the Sentencing Commission has not updated the Guideline since the passage of the First Step Act.[10] The Guideline allows for a sentence reduction for compassionate release "[u]pon motion of the Director of the Bureau of Prisons . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that

---

[10] The Commission's failure to amend the Guideline is likely due to its lack of sufficient members for a quorum. *See* U.S. Sentencing Commission, "About the Commissioners," https://www.ussc.gov/commissioners (last visited June 25, 2021) (listing only 1 voting commissioner); U.S. Sentencing Commission, "Organization," https://www.ussc.gov/about/who-we-are/organization (last visited June 25, 2021) ("The affirmative vote of at least four members of the Commission is required to promulgate amendments to the sentencing guidelines.").

8

they are applicable, the court determines that . . . extraordinary and compelling reasons warrant the reduction[.]" USSG § 1B1.13. It further outlines four categories of extraordinary and compelling reasons in the application notes: the defendant's medical condition, the defendant's age (at least 65 years old), family circumstances, and "other reasons." *Id.*, comment. (n.1). This last category is known as the "catch-all" clause. *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020). The Guideline notes also explain that the catch-all clause applies when, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the [other] reasons[.]" USSG § 1B1.13, comment. (n.1). In other words, according to the Guideline, wide discretion regarding what constitutes an "extraordinary and compelling reason" rests only with the BOP Director.

The Ninth Circuit recently addressed the question of whether the Guideline applies to compassionate release motions brought by defendants. In *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), the court held that the Guideline "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(C)(1)(A) motions filed by a defendant." (brackets in original). At most, the Guideline "may inform a district court's discretion . . . but [it is] not binding." *Id.* (citation omitted).

Unfettered by USSG § 1B1.13, the Court follows Section 3582(c)(1)(A)'s direction.

B.   Whether Extraordinary and Compelling Reasons Exist Here[11]

The question before the Court is not the same question addressed at sentencing. The Court is not asked to determine whether the sentence previously imposed was "sufficient, but not greater than necessary" to comply with the factors outlined in 18 U.S.C. § 3553(a)(2), but rather, to determine whether "extraordinary and compelling reasons warrant . . . a reduction." 18 U.S.C. § 3582(c)(1). If the answer to that question is yes, then the Court is required to evaluate the Section 3553(a) factors to decide whether to reduce the incarceration term. *See* 18 U.S.C. § 3582(c)(1)(A).

1.   Defendant's Health

Defendant purports to have multiple risk factors: chronic kidney disease, hypertension, gastro-esophageal reflux disease, ▮▮▮▮▮, and obesity.[12]

//

//

---

[11] The Court finds — and it is undisputed — that Defendant has met the administrative requirements for filing the Motion.

[12] The Presentence Investigation Report indicates, and the Government acknowledges, that Defendant also suffers from an aneurysm of unspecific cite and polyneuropathy. *See* ECF No. 12 at 19; ECF No. 41 at 6. Defendant's records also reveal that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ However, neither party has explained what impact, if any, these conditions have.

a. Chronic Kidney Disease

It is undisputed that Defendant suffers from stage five chronic kidney disease and is dependent on renal dialysis, *see* ECF No. 30 at 3, 7; ECF No. 38 at 13:7–8; ECF No. 41 at 6, which could put him at an increased risk of severe illness from COVID-19. *See* CDC, "COVID-19: Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 25, 2021).

b. Hypertension

The parties do not dispute that Defendant suffers from hypertension, *see* ECF No. 30 at 7; ECF No. 41 at 6, which could put him at an increased risk of severe illness from COVID-19. *See* CDC, "COVID-19: Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 25, 2021).

c. Gastro-esophageal Reflux Disease

While the parties agree that Defendant suffers from gastro-esophageal reflux disease, *see* ECF No. 30 at 7; ECF No. 41 at 6, the disease is not on the CDC's list of conditions placing individuals at higher risk of becoming severely ill from COVID-19, nor has Defendant directed the Court to any studies indicating as much.



e. Obesity

The parties agree that Defendant is obese, *see* ECF No. 30 at 7; ECF No. 41 at 6, which could put him at an increased risk of severe illness from COVID-19. *See* CDC, "COVID-19: Medical Conditions," https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 25, 2021).

f. Defendant's Prior COVID-19 Diagnosis

Defendant tested positive for COVID-19 in December 2020 and suffered from body aches for several days. *See* ECF No. 36-1 at 2; ECF No. 46-3 at 63, 71, 73, 78, 80. Fortunately, Defendant did not have any other symptoms, such as fever, chills, shortness of breath, headache, nausea, vomiting, diarrhea, or loss of

taste or smell. *See* ECF No. 46-3 at 61–92. Although Defendant recovered from COVID-19 without experiencing severe symptoms, the Court cannot assume that he would have a similar positive recovery if reinfected, especially given that he suffers from hypertensive stage five chronic kidney disease.

g. Defendant's Immunization

While there is some dispute as to whether Defendant has received any immunization dosage, *compare* ECF No. 41 at 31, *with* ECF No. 47 at 3, the Court will take Defendant at his word that he received his first vaccine dose on May 24, 2021.[13] *See* ECF No. 47 at 3; *see also* ECF No. 36-1 at 2.

Defendant's end-stage chronic kidney disease, hypertension, ▮▮▮▮ and obesity are conditions for which he might be at an increased risk for severe illness. The Court acknowledges that, in combination, Defendant's health conditions make him more vulnerable to serious complications from COVID-19 than a healthy person.

2. Conditions at MCFP Springfield

As of June 25, 2021, more than half of the prison facilities managed by the BOP reported zero or only one active COVID-19 case among inmates, including MCFP Springfield which has zero active cases. *See* Federal Bureau of Prisons,

---

[13] The Court does so because Defendant has no apparent reason to lie about his vaccination status and the Government has not offered any record showing that this is untrue.

13

https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited June 25, 2021). Since the filing of Defendant's Motion, MCFP Springfield has reported two more inmate deaths, totaling 20 deaths. *Compare id.*, *with* ECF No. 27 at 2. Defendant contends that MCFP Springfield fails to properly enforce social distancing measures, maintain sanitary common bathrooms, and provide enough hand sanitizers to inmates. *See* ECF No. 27 at 13–14. The Government has not responded to these characterizations and the Court therefore does not have a basis upon which to doubt them.

Defendant contracted COVID-19 at MCFP Springfield in December 2020 and could be reinfected considering that COVID-19 is still present in the federal prison system. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited June 25, 2021) (As of June 25, 2021, 61 federal inmates and 136 BOP staff have tested positive for COVID-19.). However, the Court determines that Defendant's risk of reinfection is currently slim based on MCFP Springfield's present infection statistics. *Id*.

The possibility of Defendant's reinfection is further reduced by the increasing availability of the vaccine and Defendant's vaccination status. Currently, MCFP Springfield has fully vaccinated 569 inmates and 359 staff members. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Learn more about vaccinations and view individual facility stats") (last visited

June 25, 2021). Defendant argues that despite receiving the first of two vaccine doses, he is still at risk of contracting COVID-19, especially one of the variants. *See* ECF No. 47 at 4. While it is currently true that anyone who is vaccinated will never be fully protected from COVID-19, Defendant's vaccination weighs heavily against a finding of an extraordinary or compelling circumstance. *See United States v. Wills*, No. 3:15-cr-00465-BR, 2021 WL 2179256, at *3–4 (D. Or. May 27, 2021) (collecting cases). Moreover, MCFP Springfield appears to have COVID-19 under control based on its report of zero active cases among inmates and the increasing number of fully vaccinated inmates. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Learn more about vaccinations and view individual facility stats") (last visited June 25, 2021).

Defendant also argues that the BOP's rejection of his request to be placed on the kidney transplant waitlist renders his situation extraordinary and compelling. *See* ECF No. 38 at 13:12–15; ECF No. 29 at 16; ECF No. 47 at 2–3. The Government responds that Defendant receives "superb medical treatment" for his chronic kidney disease at MCFP Springfield that is better than treatment he would obtain outside of prison. *See* ECF No. 41 at 20. The Court finds that Defendant is receiving medical treatment that meets his immediate needs, especially considering that Defendant's only complaint about his medical care relates to the rejection of his request to be placed on the kidney transplant list, and there has been no

15

suggestion that Defendant would be eligible for a kidney transplant if he were released. *See generally* ECF Nos. 29, 47. The BOP understandably denied Defendant's request due to the risk that Defendant would become severely ill from COVID-19 because the procedure involves suppressing the immune system. *See* ECF No. 29 at 16; ECF No. 41 at 9.

The Government and Defendant appear to disagree on Defendant's need for a kidney transplant and Defendant's medical records do not indicate how urgent his need is. The Government suggests that Defendant does not immediately need a kidney transplant because he has been effectively managing his chronic kidney disease on dialysis for the past 13 years, and that most people with end-stage renal disease never receive a transplant and instead receive regular maintenance dialysis for life. *See* ECF No. 41 at 9, 19. But Defendant states that he does not know how long he will be able to survive on dialysis and emphasizes that he is beyond the average life expectancy on dialysis, which is five to ten years. *See* ECF No. 47 at 3 (citing National Kidney Foundation, "Dialysis," https://www.kidney.org/atoz/content/dialysisinfo). However, Defendant has not presented any evidence from his doctor or a nephrology expert indicating an urgent need for a transplant, nor has he shown that he is more likely to receive a kidney transplant if he were released from prison. Additionally, the National Kidney Foundation, to which Defendant had cited in his brief, also states "many patients have lived well on dialysis for 20

or even 30 years." National Kidney Foundation, "Dialysis," https://www.kidney.org/atoz/content/dialysisinfo (last visited June 25, 2021).

In sum, on this record, Defendant's current health status, combined with the MCFP Springfield's vaccination rate and current rate of COVID-19 infections, do not amount to extraordinary and compelling circumstances to consider reducing the sentence.[14]  The Court's finding is without prejudice to the possibility that, in the future, Defendant may be able to provide evidence showing an urgent need for a kidney transplant, or that other circumstances may change warranting reconsideration of this decision.

III. CONCLUSION

For the foregoing reasons, the Court DENIES the Motion WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, June 25, 2021.

Jill A. Otake
United States District Judge

CR NO. 19-00137 JAO; *United States v. Medeiros*; Order Denying without Prejudice Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)

---

[14]  Because the Court has determined that extraordinary and compelling reasons do not exist to warrant consideration of a reduction in sentence, it need not evaluate the Section 3553(a) factors.