IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SAMUEL JOHN MEDEIROS, JR.,<br>aka "John John,"<br><br>　　　　　Defendant. | CR. NO. 19-00137 JAO<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (COMPASSIONATE RELEASE)** |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S SECOND MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

Defendant Samuel John Medeiros, Jr. ("Defendant") filed a Second Motion to Reduce Sentence ("Second Motion"), seeking compassionate release pursuant to 18 U.S.C. § 3582. ECF No. 54. The Court decides this motion without a hearing pursuant to Local Rule 7.1(c). For the following reasons, the Second Motion is DENIED WITHOUT PREJUDICE.

I.　　BACKGROUND

　　A.　　Procedural History

On September 23, 2019, the Government filed an Information against Defendant, alleging violations of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). ECF No. 1. On September 25, 2019, Defendant signed a Waiver of Indictment and

entered into a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, admitting that he was guilty of possession with intent to distribute 5 grams or more of a substance and mixture containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B).  ECF Nos. 6–7.  On January 15, 2020, consistent with the plea agreement, the Court sentenced Defendant to 90 months in prison and five years of supervised release.  ECF Nos. 15–16.  Defendant is incarcerated at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("MCFP Springfield") and is expected to be released on October 22, 2025.  *See* Federal Bureau of Prisons, https://www.bop.gov/inmateloc (follow "Find By Name" tab; then search for "Samuel John Medeiros") (last visited Nov. 25, 2022).

On March 31, 2021, Defendant filed his first Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("First Motion"), ECF Nos. 23, 27, which was later supplemented, ECF No. 36, and that the Court denied on June 25, 2021, ECF No. 48.

On August 18, 2022, Defendant filed the Second Motion.  ECF No. 54.  The Court granted the Government's motion for an extension of time to respond, ECF No. 60, and the Government filed its opposition on September 30, 2022, ECF No. 64.  Defendant replied on October 6, 2022.  ECF No. 65.

    B.    The First Motion And Order

In the First Motion, Defendant sought relief based on his health conditions, the risks associated with him contracting COVID-19, and his stated need for a kidney transplant. *See* ECF No. 27 at 6; ECF No. 29 at 16.

In denying the First Motion, the Court outlined Defendant's medical conditions, and acknowledged that Defendant was a 50-year-old who is on kidney dialysis due to suffering from stage five chronic kidney disease. *See* ECF No. 48 at 4. It also outlined Defendant's "extensive prior criminal record" and noted that he was on dialysis when committing several violations, including the offense of conviction in this case. *See id*. at 6–7. The Court then reported the number of active COVID-19 cases at the time at MCFP Springfield, which was zero. *See id*. at 7. The Court concluded that Defendant's health status in the context of MCFP Springfield's vaccination and COVID-19 infection rates did not amount to extraordinary and compelling circumstances to consider reducing the sentence. *Id.* at 17.

    C.    Defendant's Background

        1.    Defendant's Current Condition

The Court incorporates its description of Defendant's medical conditions in the Order denying the First Motion, as the record does not suggest that those medical conditions have changed. *Id.* at 4–6. In addition, Defendant presents the

3

following updated information for the Court's consideration: (1) Defendant is now 52 years old; (2) he has suffered three large and painful aneurysms in his arm related to the use of a fistula for kidney dialysis, which required surgery, *see* ECF No. 54-1 at 12; ECF No. 58-2 at 4; (3) thereafter, he started to use a chest catheter instead to avoid the aneurysms; *see* ECF No. 54-1 at 15–16; ECF No. 64-2 at 1; (4) the Bureau of Prisons ("BOP") denied his request for assessment and placement on the kidney transplant list due, at least in part, to his refusal to allow for the use of an arm graft instead of the catheter; *see* ECF No. 54-2 at 7; ECF No. 64-2 at 1; and (5) he also suffers from perivascular dermatitis, or a painful rash, possibly as a result of either his COVID-19 infection and/or his subsequent vaccinations, *see* ECF No. 54-1 at 14; ECF Nos. 58-3, 58-4, 58-5.

Defendant's request for assessment and placement on the kidney transplant list alleged that the BOP informed him that he was in "non-compliance" for having a chest catheter. ECF No. 54-2 at 7. Defendant contested the requirement that he utilize the graft, pointing to the fact that the BOP guidelines are silent as to whether using a chest catheter for kidney dialysis precludes anyone from serious consideration for an organ transplant. *See id*. In response, the BOP explained that his request was denied because Defendant refused to (1) use an arm graft, (2) submit to an eye examination, and (3) submit to colon cancer screening, and therefore that "[his] medical compliance is unsuitable for elective solid organ

4

transplantation . . . at this time." *See id.* at 7. The record reflects that the BOP medical staff explained to Defendant the risks and problems associated with extended catheter use. *See id*. at 7–8. Defendant later had both the eye examination and the colon cancer screening, and reports that he had not refused either test. *See* ECF No. 54-1 at 8; ECF No. 58-1 at 3.

In response to the Second Motion, the Government submitted an undated letter from Sara Garrison, a certified family nurse practitioner employed by the BOP. ECF No. 64-2. She reviewed the medical records and met with Defendant on September 24, 2021, advising him of the importance of using the graft and removing the catheter. *See id*. Specifically, she informed him that the chest catheter "poses a higher risk for infection . . . because the catheter is exposed to the environment by being outside of the body, and the tip is positioned within the superior vena cava of the heart." *Id*. at 1. According to the letter, another registered nurse met with Defendant on January 18, 2022, and discussed his noncompliance, and that it is a consideration for his organ transplant assessment. *See id*. The letter confirms that, should Defendant come into compliance, "he could be reconsidered after a few months of showing a changed behavior" and that compliance would require switching from the chest catheter to the graft for dialysis treatments. *Id*. at 2. She noted, "[i]f he was not incarcerated, the same standards

5

for compliance vs. noncompliance would be used at the time of an assessment by a Nephrology team of his choosing in regards to inclusion/exclusion criteria." *Id.*

        2.      Defendant's History And Post-sentencing Behavior

The Court incorporates herein the discussion of Defendant's criminal history and post-sentencing behavior as outlined in the Order denying the First Motion.

    C.    Conditions At MCFP Springfield

As of this writing, MCFP Springfield has one active case of COVID-19 among inmates or staff. *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited Nov. 25, 2022). Currently, MCFP Springfield has a population of 1,050 inmates, and is at Level 1 Operations for COVID-19, which reflects a medical isolation rate of less than 2%, a facility vaccination rate of equal to or more than 65%, and a community transmission rate of less than 100 cases per 100,000 people over the last seven days. *See id.*; Federal Bureau of Prisons, https://www.bop.gov/locations/institutions/spg (last visited Nov. 25, 2022); https://www.bop.gov/coronavirus/covid19_modified_operations_guide (last visited Nov. 25, 2022).

    //

    //

    //

## II. DISCUSSION

    A.    The First Step Act

Title 18, United States Code, Section 3582(c)(1)(A), allows courts to grant compassionate release motions brought either by the Director of the Bureau of Prisons or an incarcerated defendant so long as certain requirements are met:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –
>
>> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (2018). United States Sentencing Guidelines Manual ("USSG") section 1B1.13 ("the Guideline") addresses Section 3582 motions, but the Sentencing Commission has not updated the Guideline since the passage of the First Step Act.[1] In *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021), the

---

[1] The Commission's failure to amend the Guideline is likely due to its previous
(continued . . .)

Ninth Circuit held that the Guideline "is not an 'applicable policy statement[]' for 18 U.S.C. § 3582(C)(1)(A) motions filed by a defendant." (brackets in original). In such cases, the Guideline "may inform a district court's discretion . . . but [it is] not binding." *Id*. (citation omitted).

Defendant bears the burden of establishing the extraordinary and compelling circumstances that would justify compassionate release. *See Aruda*, 993 F.3d at 801 ("[D]istrict courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant may raise." (internal quotation marks, alteration, and citation omitted)); *Andrews v. King*, 398 F3d 1113, 1124 n.2 (9th Cir. 2005) (Fernandez, J., concurring in part) (noting that "in the sentencing context, the burden of proving facts that would warrant a reduced sentence rests on the defendant" (citations omitted)); *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has

---

(. . . continued)
lack of sufficient members for a quorum. *See* U.S. Sentencing Commission ("USSC"), "Acting Chair Judge Charles Breyer, Incoming Chair Judge Carlton W. Reeves Applaud Senate Confirmation of New Commissioners," https://www.ussc.gov/about/news/press-releases/august-5-2022 (last visited Nov. 25, 2022) (noting the Senate's recent confirmation of 7 commissioners now provides the USSC "with a voting quorum for the first time in more than three years"); USSC, "Organization," https://www.ussc.gov/about/who-we-are/organization (last visited Nov. 25, 2022) ("The affirmative vote of at least four members of the Commission is required to promulgate amendments to the sentencing guidelines.").

the burden of showing that the circumstances warrant that decrease." (citations omitted)).

  B. Whether Extraordinary And Compelling Reasons Exist Here[2]

  The question before the Court is not the same question addressed at sentencing. The Court is not asked to determine whether the sentence previously imposed was "sufficient, but not greater than necessary" to comply with the factors outlined in 18 U.S.C. § 3553(a)(2), but rather, to determine whether "extraordinary and compelling reasons warrant . . . a reduction." 18 U.S.C. § 3582(c)(1). If the answer to that question is yes, then the Court is required to evaluate the Section 3553(a) factors to decide whether to reduce the incarceration term. *See* 18 U.S.C. § 3582(c)(1)(A).

  Defendant seeks compassionate release based on a combination of his health, the COVID-19 risks at MCFP Springfield, and "the denial to assess transplant appropriateness and place Mr. Medeiros on the kidney transplant list." ECF No. 54-1 at 1–2.

  1. Defendant's Health

  Defendant purports to have multiple risk factors: chronic kidney disease, hypertension, gastro-esophageal reflux disease, hyperkalemia, and obesity. ECF

---

[2] The Court finds — and it is undisputed — that Defendant has met the administrative requirements for filing the Motion.

9

No. 54-1 at 15.  The Court has already addressed these conditions in the Order denying the First Motion.  *See* ECF No. 48 at 10–13.  There, the Court acknowledged that "in combination, Defendant's health conditions make him more vulnerable to serious complications from COVID-19 than a healthy person."  *Id*. at 13.

As for the recently-recurring rash, while the Court does not doubt Defendant's description of its impact on him, the rash itself does not significantly detract from his overall health and Defendant does not suggest that the rash somehow increases his morbidity, with or without COVID-19.

2. Conditions At MCFP Springfield

As of November 25, 2022, MCFP Springfield has only one active COVID-19 case among inmates and staff, and was at the lowest level of COVID-19 restrictions due to the high percentage of vaccinations and low community transmission rate.  *See* Federal Bureau of Prisons, https://www.bop.gov/coronavirus (click on "Full breakdown and additional details") (last visited Nov. 25, 2022).  As it did in June of 2021, when MCFP Springfield had zero active COVID-19 cases, the Court again determines that Defendant's risk of reinfection is currently slim based on MCFP Springfield's present infection statistics.  And to date, Defendant has received the initial COVID-19 vaccine and two boosters — one of which post-dates the Court's prior Order.  *See* ECF No. 58-4 at 2.

While it is currently true that anyone who is vaccinated will never be fully protected from COVID-19, as before, Defendant's vaccination weighs heavily against a finding of an extraordinary or compelling circumstance. *See United States v. Wills*, No. 3:15-cr-00465-BR, 2021 WL 2179256, at *3–4 (D. Or. May 27, 2021) (collecting cases). Moreover, MCFP Springfield appears to have COVID-19 under control.

### 3. Kidney Transplant List

Defendant also previously argued that the BOP's rejection of his request to be placed on the kidney transplant waitlist renders his situation extraordinary and compelling. *See* ECF No. 29 at 16; ECF No. 47 at 2–3. The Government responded then that Defendant receives "superb medical treatment" for his chronic kidney disease at MCFP Springfield that is better than treatment he would obtain outside of prison. *See* ECF No. 41 at 20. In the Order denying the First Motion, the Court found that "Defendant is receiving medical treatment that meets his immediate needs, especially considering that Defendant's only complaint about his medical care relates to the rejection of his request to be placed on the kidney transplant list, and there has been no suggestion that Defendant would be eligible for a kidney transplant if he were released." ECF No. 48 at 15–16. The Court further remarked that "[t]he BOP understandably denied Defendant's request due to the risk that Defendant would become severely ill from COVID-19 because the

11

procedure involves suppressing the immune system." *Id*. at 16.  But the Court indicated that its "finding is without prejudice to the possibility that, in the future, *Defendant may be able to provide evidence showing an urgent need for a kidney transplant, or that other circumstances may change warranting reconsideration of this decision.*" *Id.* at 17 (emphasis added).

In the Second Motion, Defendant does not contest that he receives dialysis treatments three times per week, nor that, as Ms. Garrison stated in her letter, "[i]n the setting of End Stage Renal Disease, the standard treatment is dialysis thrice-weekly." ECF No. 64-2 at 2.  Rather, he urges the Court to order his release so that he can be considered for kidney transplant.  He is unwilling to follow the BOP's demand that he return to the graft and remove the chest catheter for dialysis because doing so places him at risk of developing aneurysms in his arm again, and the use of the graft for dialysis is not mandated by the BOP policy.  *See* ECF No. 54-1 at 12; ECF No. 65 at 3.  Unfortunately for him, the BOP views this as noncompliance, which is a factor it may consider when determining whether to assess someone for a kidney transplant.  *See* ECF No. 54-2 at 10–42 (BOP Evaluation Guidelines for Organ Transplantation ("BOP Evaluation Guidelines")); *id.* at 22.

The Government does not point to any language in the BOP Evaluation Guidelines requiring the use of the graft, and indeed, they are silent as to that.

Rather, the Government essentially argues that Defendant has the ability to remedy this conundrum by switching to the graft, which means he would then be in compliance with his kidney dialysis treatment, assuming he continues to abide by all the other expectations.  *See* ECF No. 64 at 3–4.  The Government also argues that a kidney transplant could increase his risk of contracting COVID-19 as immunosuppressant drugs are required for the remainder of his life should he receive one.  *See* ECF No. 64 at 3; BOP Evaluation Guidelines at 20 ("Renal transplantation requires lifelong immunosuppressive drug therapy. . . .  Chronic immunosuppression weakens the body and increases the risk of certain infectious diseases that may be life threatening.").

While the Court is sympathetic to Defendant's understandable anxiety about utilizing a graft for dialysis, it is not in a position to evaluate whether the BOP's demand that he do so is contrary to existing policy or otherwise unreasonable, especially without any medical records or opinions that suggest otherwise.[3]  Although it is true that the graft is not required by the BOP Evaluation Guidelines, the Court is skeptical that that fact alone means that the BOP's demand is out of

---

[3]  The most Defendant offers is a footnote explaining that the National Kidney Foundation recommends an arm fistula as the preferred method for "permanent vascular access" for dialysis, followed by an arm graft, but that it would recommend a catheter for "temporary access" when "[t]here [are] conditions that prevent you from having a fistula or graft."  ECF No. 54-1 at 4 n.2 (quoting https://www.kidney.org/atoz/content/hemocatheter (last visited July 18, 2022)).

13

the ordinary. It makes logical sense that a chest catheter that transverses from the exterior of the body to the interior at or near the heart may increase the risk of infection. And, significantly, Defendant still has not presented any evidence that he is more likely to receive a kidney transplant if released, particularly where he has a host of other medical issues.

In sum, on this record, Defendant's current health status, combined with the MCFP Springfield's vaccination rate and current rate of COVID-19 infections, and the BOP's refusal to consider him for a kidney transplant without further compliance, do not amount to extraordinary and compelling circumstances to consider reducing the sentence.[4] The Court's finding is again without prejudice to the possibility that, in the future, Defendant may be able to provide evidence showing that he will be likely eligible for a kidney transplant if released, and that the need for such transplant is urgent.

//

//

//

//

---

[4] Because the Court has determined that extraordinary and compelling reasons do not exist to warrant consideration of a reduction in sentence, it need not evaluate the Section 3553(a) factors.

III.  CONCLUSION

For the foregoing reasons, the Court DENIES the Second Motion WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, November 25, 2022.



Jill A. Otake
United States District Judge

CR. NO. 19-00137 JAO; *United States v. Medeiros*; Order Denying without Prejudice Defendant's Second Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release)